CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

DEC 2 6 2017

JULIA C. DUDLEY, CLERK
BY: _____
    DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
### ROANOKE DIVISION

| | |
|---|---|
| STEVEN RIDDICK, | ) CASE NO. 7:17CV00268 |
| Plaintiff, | ) |
| v. | ) MEMORANDUM OPINION |
| DEPARTMENT OF CORRECTIONS, ET AL., | ) |
| | ) By: Hon. Glen E. Conrad |
| | ) Senior United States District Judge |
| Defendants. | ) |

Steven Riddick, a Virginia inmate proceeding pro se, filed this civil rights action pursuant to 42 U.S.C. § 1983, alleging multitudinous violations of his constitutional rights. Upon review of the record, the court concludes that Riddick's initial complaint is so factually and legally deficient that the action must be summarily dismissed without prejudice for failure to state a claim.

I.

Riddick, now incarcerated at Red Onion State Prison ("Red Onion"), submitted his 126-page § 1983 complaint in June 2017. In that pleading, he names 56 defendants and complains about various incidents and frustrations he has experienced at Red Onion or other Virginia Department of Corrections ("VDOC") prison facilities since 2007. Riddick has greatly slowed the court's screening of his claims by filing eight motions seeking to amend the action to add claims and name more defendants. As relief, Riddick wants to recover monetary damages; to have the money from his inmate savings account transferred to his spend account; to be transferred to Sussex I or II State Prison "so [he] can get proper medical care and medicine for [his] HSVI infection"; and to leave segregation without participating in a program. (Id. at 3.)

## II.

As an initial concern, Riddick's pleading defies the Federal Rules of Civil Procedure governing joinder of claims and defendants in a single civil action. See Fed. R. Civ. P. 18 and 20. Rule 18(a) allows a plaintiff to bring multiple claims, related or unrelated, in a lawsuit against a single defendant. On the other hand, Rule 20 allows the joinder of several defendants in one civil action only if the claims "ar[ose] out of the same transaction or occurrence, or series of transactions or occurrences" and contain a "question of law or fact common to all defendants." Fed. R. Civ. P. 20(a)(2)(A) and (B). Under these rules, "a plaintiff may name more than one defendant in a multiple claim lawsuit only if the claims against all defendants arose out of the same incident or incidents and involve a common factual or legal question." Green v. Denning, No. 06-3298, 2009 WL 484457, at *2 (D. Kan. Feb. 26, 2009) (emphasis added). These procedural rules apply with equal force to pro se prisoner cases. Id. Riddick's pleading clearly violates Rule 20 by attempting to join, in one omnibus civil action, multiple, disjointed and unrelated claims from widely differing time periods against dozens of defendants. The only fact his claims have in common is his incarceration, and the legal questions his claims raise are vastly different. Such diverse fact patterns and claims cannot properly be presented in one § 1983 complaint.[1]

In addition, permitting Riddick to consent to pay the filing fee for one civil case, and at the same time, to pursue dozens of disparate claims against 56 parties and concerning unrelated events and transactions in that one case, flies in the face of the letter and spirit of the Prison Litigation Reform Act ("PLRA"). PLRA restrictions on prisoner-filed civil actions include: full exhaustion of available administrative remedies before bringing a federal lawsuit; full payment

---

[1] See Pruden v. SCI-Camp Hill, No. 3:CV-07-0604, 2007 WL 1490573, at *2 (M.D. Pa. May 21, 2007) (finding misjoinder where "[a] careful reading of Plaintiff's allegations shows that the only common thread they all share is that they allegedly occurred while he was incarcerated").

of the filing fee in any civil action or appeal; authorization of court review and summary disposition of claims that are frivolous or malicious or fail to state a valid claim upon which relief can be granted; and a "three strike" provision that prevents a prisoner from proceeding without prepayment of the filing fee if the prisoner's past litigation in federal court includes three or more cases dismissed as frivolous, malicious, or as stating no claim for relief. See gen. 28 U.S.C. §§ 1915, 1915A; 42 U.S.C. § 1997e(a). "Congress enacted PLRA with the principal purpose of deterring frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims." Lyon v. Krol, 127 F.3d 763, 764 (8th Cir. 1997). Strict compliance with federal joinder rules "prevents prisoners from 'dodging' the fee obligation and '3-strikes' provision of the PLRA." Green, 2009 WL 484457, at *2. As the court noted in Green:

> To permit plaintiff to proceed in this single action on unrelated claims against different defendants that should be litigated in separate action(s) would allow him to avoid paying the filing fees required for separate actions, and could also allow him to circumvent the three strikes provision for any new and unrelated claims that might be found to be "strike" under 28 U.S.C. § 1915(g).

Id. at *3.

Thus, to allow Riddick to essentially package many lawsuits into one complaint would undercut the PLRA's three-strikes provision and its filing fee requirement.[2] Moreover, Riddick admits in his complaint that as to many of his allegations, he did not exhaust administrative remedies as required before filing his lawsuit. See Ross v. Blake, __U.S.__, 136 S. Ct. 1850, 1856 (2016) (holding that under 42 U.S.C. § 1997e(a), exhaustion of available administrative remedies before filing in federal court is "mandatory"). Because Riddick's complaint, even

---

[2] See, e.g., Pruden, 2007 WL 1490573 at *2 (noting that "[i]n being permitted to combine in one complaint several separate, independent claims, Plaintiff is able to circumvent the filing fee requirements of the PLRA"); Patton v. Jefferson Correctional Center, 136 F.3d 458, 464 (5th Cir. 1998) (discouraging "creative joinder of actions" by prisoners attempting to circumvent the PLRA's three-strikes provision).

liberally construed, fails to state claims surviving the required screening under § 1915A, however, the court will dismiss the action under that provision.

## III.

The court is required to dismiss any action or claim filed by a prisoner against a governmental entity or officer if the court determines the action or claim is frivolous, malicious, or fails to state a claim on which relief may be granted. 28 U.S.C. § 1915A(b)(1). To state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim of relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Mere "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" are not factual allegations and need not be accepted as true. Id. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Id. at 679. On the other hand, the court may dismiss as frivolous any claim based on "an indisputably meritless legal theory," "claims of infringement of a legal interest which clearly does not exist," or claims where the "factual contentions are clearly baseless." Neitzke v. Williams, 490 U.S. 319, 327 (1989).

### A. Time-barred Claims

Section 1983 permits an aggrieved party to file a civil action against a person for actions taken under color of state law that violated his constitutional rights. See Cooper v. Sheehan, 735 F.3d 153, 158 (4th Cir. 2013). No federal statute of limitations applies in § 1983 actions. Accordingly, such actions are governed by the state statute of limitations applicable for general personal injury cases in the state where the alleged constitutional violations occurred. Owens v. Okure, 488 U.S. 235, 239-40 (1989). Virginia's statute for general, personal injury claims, Va.

Code Ann. § 8.01-243(a), requires that such claims be brought within two years from the time when the action accrues. A claim under § 1983 accrues when the plaintiff possesses sufficient facts about the harm done to him that reasonable inquiry will reveal his cause of action. Nasim v. Warden, Md. House of Correction, 64 F.3d 951, 955 (4th Cir. 1995) (en banc).

Many of Riddick's claims concern events that occurred more than two years before he filed his complaint in June 2017 and, as such, are filed outside the statutory period under Va. Code Ann. § 8.01-243(a). In addition, many other undated claims may well have accrued before June 2015 and be time-barred. Where the applicable statute of limitations provides an affirmative defense to a claim, the court may summarily dismiss that claim as frivolous, pursuant to § 1915A(b)(1). Id. at 956 (affirming district court's summary dismissal of time-barred claim as frivolous under prior § 1915(d)); Todd v. Baskerville, 712 F.2d 70, 74 (4th Cir. 1983) (finding under former version of § 1915 that court may summarily dismiss as frivolous a claim clearly barred by applicable statute of limitations or other affirmative defense).

B. Improper Defendants and Lack of Personal Involvement

"[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983," and this same rule applies to "governmental entities that are considered 'arms of the State.'" Will v. Michigan Dep't of State Police, 491 U.S. 58, 70, 71 (1989). Some of Riddick's attempted claims fail under this principle. Because the VDOC is properly considered an arm of the Commonwealth of Virginia, this entity is not subject to suit under § 1983. Other defendants Riddick has named are groups of people, rather than individual persons: Red Onion Staff, Medical Staff, and Medical Dept. Because these defendants and the VDOC are not "persons" who can be sued under § 1983, the court must dismiss Riddick's attempted claims against them

under § 1915A as legally frivolous. The court must also dismiss as frivolous claims against any other defendant in his or her official capacity. Id. at 71.

Many more of Riddick's claims against individual prison officials in their individual capacities are factually frivolous, because Riddick fails to allege specific actions undertaken by these individuals in violation of his constitutional rights. Cooper, 735 U.S. at 158. Indeed, many of his complaints about prison life are not factually linked to any individual official in any way. Absent allegations of personal involvement by a defendant, Riddick has failed to state actionable § 1983 claims against that person. See Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (finding that "liability will only lie where it is affirmatively shown that the official charged acted personally in the deprivation of the plaintiff['s] rights") (internal quotation marks and citation omitted). Riddick also cannot hold any defendants liable under § 1983 based merely on their supervisory positions or their allegedly unsatisfactory responses to his inmate complaints, grievances, and appeals, as he attempts to do. Id. (finding doctrine of respondeat superior inapplicable under § 1983); Brooks v. Beard, 167 F. App'x 923, 925 (3d Cir. 2006) (unpublished) (finding officials' allegedly inappropriate responses to grievances insufficient to establish involvement in underlying alleged deprivation).

As to some of his claims, Riddick does mention individual officials' names and, occasionally, some facts about their actions. Because Riddick fails to allege the necessary elements to show any constitutional violation by any individual defendant, however, his claims must be dismissed under § 1915A.

C. Step Down Program

Riddick complains at length about VDOC policies governing administrative segregation at Red Onion, particularly the Step Down Program that sets out criteria inmates must meet to

earn additional privileges and move to less restrictive housing assignments. Riddick contends that conditions in segregation are so harsh as to violate the Eighth Amendment's prohibition against cruel and unusual punishment. He also argues that several officials have violated his federal due process rights by using the policy to prevent him from progressing in the Step Down Program and out of segregation or by failing to follow various VDOC policy provisions. He claims that officials have repeatedly failed to state specific reasons for recommending against his advancement to a step with more privileges or have approved their own recommendations, in violation of policy.

This court has squarely rejected similar constitutional challenges to the Step Down policy and its implementation. Specifically, the court has found that the policy does not trigger federal procedural protections for inmates during the Step Down Program's various classification reviews and that conditions experienced by segregation inmates, per policy, do not violate the Eighth Amendment. See DePaola v. Virginia Dep't of Corr., No. 7:14CV00692, 2016 WL 5415903 (W.D. Va. Sept. 28, 2016) (Jones, J.); Obataiye-Allah v. Virginia Dep't of Corr., No. 7:15CV00230, 2016 WL 5415906, at *1 (W.D. Va. Sept. 28, 2016) (Jones, J.), aff'd sub nom. Obataiye-Allah v. Clarke, 688 F. App'x 211 (4th Cir. 2017). Riddick also has no viable claim based on officials' alleged violations of the Step Down policies, because such violations of state policy do not amount to a constitutional violation actionable under § 1983. Riccio v. County of Fairfax, Virginia, 907 F.2d 1459, 1469 (4th Cir. 1990) (holding that where state law grants more procedural rights than the Constitution requires, state official's violation of state procedure is not a federal due process issue). For these reasons, the court finds that Riddick cannot prevail on his claims concerning the Step Down policies. Therefore, the court will summarily dismiss all such claims under § 1915A.

### D. Living Conditions

To sustain a claim of unconstitutional living conditions, a prisoner must show that: (1) objectively, the deprivation was sufficiently serious, in that the challenged, official acts caused denial of "the minimal civilized measure of life's necessities"; and (2) subjectively, the defendant prison officials acted with "deliberate indifference to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 834 (1994). The objective component of this standard is met only by conditions that cause "significant physical or emotional harm, or a grave risk of such harm." Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not . . . [cannot] be condemned as the infliction of punishment." Farmer, 511 U.S. at 838. In other words, an official's merely negligent action is not sufficient to give rise to a constitutional claim and, accordingly, is not actionable under § 1983. See County of Sacramento v. Lewis, 523 U.S. 833, 849 (1998) ("[T]he Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold" of constitutional protections).

One "claim" in Riddick's complaint describes a change in the prison meals and his subsequent weight loss, for which he received medical care. However, he does not state facts showing a connection between these two events or linking them to the intentional actions of any defendant(s). He also claims that on some occasions, he has received meal trays with missing or spoiled food items or with foreign objects in the food. Such random incidents, "while unpleasant, do[] not amount to a constitutional deprivation." LeMaire v. Maass, 12 F.3d 1444, 1456 (9th Cir. 1993). Riddick also fails to show any injury resulting from these meal tray problems as necessary to support a constitutional claim.

In another section of his pleading, Riddick complains that certain officers have closed his hand or arm in the tray slot or denied him a shower or outside recreation. He fails to present facts showing that he suffered any serious injury from the incidents or that officers acted with any intention to harm him. Accordingly, his allegations do not state any deprivation of constitutional significance.

Riddick also alleges that officers have called him racially offensive names, called him a snitch or a rapist, or threatened him with disciplinary charges. Allegations of verbal abuse, threats, and harassment by guards, without more, do not state any constitutional claim. Henslee v. Lewis, 153 Fed. App'x 178, 180 (4th Cir. 2005) (citing Collins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979)).

E. Disciplinary Proceedings

Riddick claims that he has received false or fabricated disciplinary charges that affected his classification and housing assignment. Absent some evidence or claim that a challenged disciplinary conviction was improperly obtained, a showing Riddick fails to make here, an inmate's assertions that the initial charge was false or unfair cannot state a claim. See Freeman v. Rideout, 808 F.2d 949, 952–53 (2d Cir.1986) (holding that mere allegations of falsified evidence or misconduct reports, without more, does not state a claim). Riddick complains that a counselor brought a disciplinary charge against him for refusing to complete required questions while restrained to a table; he admits, however, that he did not comply with her order, thus providing some evidence in support of the charge. See Superintendent, Mass. Corr. Inst. v. Hill, 472 U.S. 445, 455-56 (1985) (holding that due process requirements are met if a "modicum of evidence" supports decision of the disciplinary hearing officer). Finally, Riddick alleges that

officials have sometimes failed to follow state procedures during disciplinary proceedings or appeals, but such state law violations are not actionable under § 1983. Riccio, 907 F.2d at 1469.

F.  Mail and Property Issues

The complaint describes several alleged problems Riddick has had with mail, such as money orders not being properly processed, issuance of receipts or posting of outgoing mail being delayed, mail being occasionally read outside his presence, and commissary orders of writing materials being delayed, limited, or defective. Riddick fails to connect the majority of these allegations with any defendant or to state facts showing that anyone intentionally interfered with his mail or property. Occasional, negligent delay or interference with personal or legal mail, without more, does not impose a deprivation of constitutional proportions. See Pink v. Lester, 52 F.3d 73, 75 (4th Cir. 1995) (legal mail); Pearson v. Simms, 345 F. Supp. 2d 515, 519 (D. Md. 2003), aff'd, 88 F. App'x. 639 (4th Cir. 2004) (outgoing mail).

Riddick mentions several occasions when he was not allowed to possess certain items of property in prison, such as original letters received in the mail from family and some photographs he purchased through the mail. Prisoners' rights to possess any property in prison are defined by state prison property regulations, however, and not the Constitution. See Board of Regents v. Roth, 408 U.S. 564, 577 (1972) ("Property interests . . . are not created by the [federal] Constitution. Rather they are created and their dimensions are defined by existing rules . . . such as state law[s] . . . that support claims of entitlement" to the property). Thus, the court finds no § 1983 claim related to property items Riddick was not allowed to have in prison.

G.  Medical Care

Riddick lists a number of health conditions from which he has allegedly suffered at one time or another while in prison: numbness in his back, blurred vision, black and white dots when

he sneezes or bends over, fluttering in his heart, high blood pressure, pain in his right side, bloody stools, constipation, pain in his anus, jaw, chest, arm, back, neck and ear, headaches, extreme fatigue, pain in his stomach, and "HSV1," also known as the herpes virus. (Compl. 107-12, ECF No. 1.) He complains that sometimes sick call requests are not returned; that he has often been charged for sick call without being referred to the doctor; that he has not received medications he believed necessary for acid reflux, high blood pressure, and HSV1; that he has received a tuberculosis vaccine while in restraints; that at some point, he suffered a "heart attack and stroke-like symptoms" (Id. at 108); that staff falsified records to show Riddick refused chronic care, but in fact, such care was not offered to him; that his request for an exam for colon cancer (which family members have contracted) was ignored; that his inhaler for asthma expired and no one provided him with a new one for over a year; that he was taken off Boost without seeing a doctor for a weight check; and that he was not given results for a chest X ray and EKG in October and December of 2016.

"Deliberate indifference to an inmate's serious medical needs constitutes cruel and unusual punishment under the Eighth Amendment." Jackson v. Lightsey, 775 F.3d 170, 178 (4th Cir. 2014) (citing Estelle v. Gamble, 429 U.S. 97, 105 (1976)). Objectively, the inmate's medical condition must be "serious" in the sense that it "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. Subjectively, "officials evince deliberate indifference by acting intentionally to delay or deny the prisoner access to adequate medical care or by ignoring an inmate's known serious medical needs." Sharpe v. South Carolina Dep't of Corr., 621 F. App'x 732, 733 (4th Cir. 2015) (citations omitted). "This deliberate indifference standard is not satisfied by a showing of mere negligence, a mere error of judgment or inadvertent failure to

provide medical care, or mere disagreement concerning questions of medical judgment." Germain v. Shearin, 531 F. App'x 392, 395 (4th Cir. 2013) (internal quotation marks, alterations, and citations omitted); see also Bowring v. Godwin, 551 F.2d 44, 48 (4th Cir. 1977) ("the essential test is one of medical necessity and not simply that which may be considered merely desirable").

Riddick's claims about medical care are, for the most part, general and undated complaints that he did not always receive the examinations or medications that he desired or did not receive prompt responses to his requests for care. His allegations reflect, however, that he has access to medical attention from nurses and doctors and has received treatment over the years. His personal belief that the care was inadequate or too long in coming is insufficient to support any constitutional claim, and he does not state facts showing deliberate indifference by any defendant.

Riddick also makes a general complaint that his several years in segregation at Red Onion have had adverse effects on his physical and mental health. Yet, his allegations reflect that when offered the chance to move to more privileged phases of the Step Down Program intended to prepare him for a less restrictive housing assignment, he has refused. Thus, Riddick's complaint provides no factual basis for claims against the defendants regarding his prolonged term in segregation or its allegedly adverse effects. In any event, as indicated, he clearly has had access to medical care for the physical and mental health effects he mentions.

H.  Religious Practices

Riddick raises several dissatisfactions regarding religious practices at Red Onion. In March 2016, the chaplain allegedly failed to process Riddick's request for Passover participation and for a Passover food order from the commissary. The chaplain also allegedly failed to

provide Riddick with a Bible he requested in September 2016. Counselor Seward recommended against Riddick's request to receive the Common Fare diet, because Riddick did not state a chosen religion and claimed to study different faiths. Riddick states that "[t]he Common Fare isn't no religious diet and is very similar to the regular diet and pretty much gets the same food." (Id. at 32.) Riddick also complains that he is not permitted to celebrate both Passover and Ramadan. Once, when he was permitted to participate in Passover and decided he was not receiving proper food items, the food service supervisor refused to provide him a regular diet instead.

"Inmates clearly retain protections afforded by the First Amendment, including its directive that no law shall prohibit the free exercise of religion." O'Lone v. Estate of Shabazz, 482 U.S. 342, 348 (1987). To prove that an official policy or action violated his free exercise rights, an inmate must first show a sincere belief or practice that is "rooted in religion," because the First Amendment "by its terms, gives special protection to the exercise of religion." Thomas v. Review Bd. of Ind. Emp't Sec. Div., 450 U.S. 707, 713 (1981). He must also show that the challenged official policy or action placed undue burden on the free exercise of his religious practice. Id. at 717. Proving the existence of such a burden requires evidence that the official policy or action "put[ ] substantial pressure on an adherent to modify his behavior and to violate his beliefs." Id. at 718. An officer's negligent interference with an inmate's religious practice is not a constitutional deprivation. Lovelace v. Lee, 472 F.3d 174, 196 (4th Cir. 2006).

Riddick simply does not allege that any official policy or action at Red Onion has pressured him in any respect to violate his religious beliefs. He does not indicate that he was unable to meet his religious dietary needs through the regular menu, without the requested Bible,

or without approval for celebration of Passover and/or Ramadan. Moreover, he does not state facts showing that anyone intentionally interfered with his stated practice of his chosen religion.

I. Retaliation

Riddick asserts that several events or actions of which he complains may have been motivated by "retaliation" against him for writing grievances or requests for services or some other reason. Claims of constitutionally significant retaliation against prison inmates must be treated with healthy skepticism, because many actions by prison officials are "by definition 'retaliatory' in the sense that [they are in] respon[se] to prisoner misconduct" or conduct. Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). The inmate must present more than conclusory or speculative allegations of retaliation. Id. "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." Snodgrass v. Messer, No. 7:16CV00050, 2017 WL 975992, at *4 (W.D. Va. Mar. 10, 2017), aff'd, No. 17-6360, 2017 WL 3263650 (4th Cir. Aug. 1, 2017) (citation omitted). Riddick's retaliation contentions are, at most, speculative and conclusory; he does not include facts showing that his exercise of a constitutionally protected right caused the challenged actions. Therefore, the court finds that his retaliation claims must be summarily dismissed under § 1915A.

IV.

For the stated reasons, the court concludes that Riddick's claims in the initial complaint are legally or factually frivolous, or fail to state a claim upon which relief can be granted, and his many attempted amendments do not correct these deficiencies. Accordingly, the court must

dismiss the action under § 1915A(b)(1) without prejudice and dismiss his multiple motions to amend the complaint as moot. The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff.

ENTER: This 26th day of December, 2017.

Guy Conrad

Senior United States District Judge